UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                    Plaintiff

v.                                          Criminal Action No. 3:26-cr-00043-RGJ

ZELOS RASHON FIELDS                                         Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

The United States moves to revoke release order [DE 7] pursuant to 18 U.S.C. § 3145(a)(1). [DE 10]. The Defendant, Zelos Rashon Fields ("Fields") responded. [DE 9]. This matter is ripe. For the reasons stated below, the United States's motion [DE 7] is **GRANTED**.

## I.    BACKGROUND

A criminal complaint and arrest warrant were issued for Fields on March 14, 2026 charging Fields with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(A). [DE 1]. Fields appeared for his initial appearance on March 16, 2026 and the Magistrate Judge held a detention hearing with all counsel and Field appearing in person on March 20, 2026.  [DE 3, DE 6]. The hearing was digitally recorded. [*Id*.] After hearing argument, the Magistrate Judge ordered Fields be released on a $25,000 unsecured bond with an order setting conditions of release. [*Id*.; DE 4] The United States made an oral motion to stay release pending filing of motion to revoke release order for consideration by a District Judge, which the Magistrate Judge granted, and ordered Fields remain in custody pending ruling on the motion to revoke. [*Id*.]

The United States filed its motion to revoke release order on March 23, 2026. [DE 7]. Fields responded on March 27, 2026. [DE 9]. Murillo-Avila was then indicted on April 08, 2026,

1

on one count of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 812. It is alleged that Fields "knowingly and intentionally conspired with others . . . to possess with intent to distribute controlled substances, to include 500 grams or more of . . . methamphetamine . . ." [DE 5]. An initial appearance for Fields is scheduled for April 27, 2026.

A pretrial services report was prepared by the United State Probation office based on an interview of Fields and verifications from the Central District of California, Lexis/Nexis, and Fields's girlfriend, Marlene Rivera.  According to the pretrial services report, Fields is 54 years old and has lived in Southern California his entire life.  The pretrial services report detailed Fields' criminal history, which consists of criminal convictions from 1989 to 1996 for possession or purchase of cocaine, base for sale, possession of a firearm by a felon, vehicle theft, and robbery of a bank using a dangerous weapon, using and carrying a firearm during a crime of violence and interference with commerce by robbery. Fields was released from prison in April 2021.  He was on supervised release through April 28, 2026, but that was terminated early on July 29, 2024 by a Court in the Central District of California on Fields's motion for early termination of supervised release. The pretrial services report recommended detention and assessed that Fields poses a risk of nonappearance and danger to the community.

At the time of the detention hearing, it was established that this is a presumption case. Fields argued that he should be released on bond with conditions because he desires to return to his stable living environment and home in California that he shares with his girlfriend and his girlfriend's children.  Fields is primarily responsible for taking the children to and from school and handling appointments for his girlfriend's children. He is employed driving for DoorDash and food delivery companies and is enrolled in a CDL class to pursue further driving employment. He was convicted at age 24 of a serious offense that he received a lengthy sentence but after being released,

his period of supervised release was terminated three years early for his good behavior.  Fields argued he has the means and methods to return to Kentucky for court appearances and conditions of release would be like those he previously complied with, including limiting his ability to leave his home.

The United States asserted that detention was inappropriate because (1) Fields is dangerous because his offense involves a large quantity of methamphetamine, (2) Fields has a criminal history involving multiple prior serious convictions with a consistent pattern of behavior and the lapse in time from those convictions is only due to the lengthy sentence he served, (3) he was released early from supervised release but the investigation of this case shows he began to travel within a year of that early release ended and the release was ended early because that Court believed Fields had changed, and (4) is now facing another substantial and lengthy prison sentence and does not have ties to the Louisville, Kentucky community resulting in flight risk.  The United States also noted that the pretrial service report noted parole violations and a conviction for failure to return work release, but that no other information is known.

The Magistrate Judge held the Fields rebutted the presumption and the United States failed to meet its burden to demonstrate sufficient risk of failure to appear or dangerousness to the community to warrant detention, and that although Fields does not have ties to this community, he does have ties to a community in California.  The Magistrate Judge released Fields on a $25,000 unsecured appearance bond with additional conditions including home detention under the supervision of the U.S. Probation Office, with exceptions for taking the children to and from school, medical care, or employment that does not involve driving (like DoorDash or delivery based driving) with permission of the U.S. Probation Office, not possessing a firearm or ammunition, and surrendering his passport. [DE 6].

The United States immediately moved orally to revoke Fields's release order. The Magistrate Judge stayed the case pending resolution of that motion pending review by the District Court.

## II.    DISCUSSION

### 1. Standard-Motion to Revoke Release Order

18 U.S.C. § 3145(a) governs review of release orders and provides that "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . [t]he motion shall be determined promptly." The statute also provides that "the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. § 3145(a)(2). This Court reviews a Magistrate Judge's release or detention order *de novo*. *United States v. Demarcus Bristuan Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, at *2 (E.D. Mich. Sept. 12, 2016) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985)). On review, this Court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. It provides four options: (1) release on personal recognizance or after execution of an unsecured appearance bond, (2) release on a condition or combination of conditions, (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C. § 3142(a). A defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the

safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004)(noting that the requirement is not one of "guarantee," but instead "reasonable assurance"). To merit an order of detention, the United States must prove either (1) that the defendant poses a serious risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) that he poses a risk to the safety of others and the community, *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010) (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether there are conditions of release that will reasonably ensure appearance of the defendant and safety of the community, the district court considers four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the appearance of the person and/or the defendant poses a threat to the safety of any other person in

the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). Proof of risk for flight is determined by a preponderance of the evidence. *United States v. Kirk*, No. 93-1459, 992 F.2d 1218 (6th Cir. 1993).

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community. The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv); *United States v. Spivak*, 555 F. Supp. 3d 541, 549 (N.D. Ohio 2021).

### 2. Presumption of detention under § 3142(e).

Section 3142(e) of the Bail Reform Act requires judicial officers making pretrial detention decisions to apply a "rebuttable presumption," in certain types of cases. Specifically, when the judicial officer finds that there is probable cause to believe that the defendant committed one of the crimes listed in § 3142(e)(3), there is a presumption in favor of detention: "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id*. at § 3142(e)(3). The presumption of § 3142(e)(3) imposes a burden of production on the defendant, requiring the defendant to come forward with evidence that he poses no danger to the community or is a risk of flight. However, even when a defendant satisfies his burden of production, the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the court. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). It is the government's ultimate burden to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community. *Id*. at 947.

6

Fields is charged with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(A) which carries a maximum term of imprisonment of 10 years or more and prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.). An indictment is sufficient to establish probable cause to believe Fields committed the charged offense. *Stone*, 608 F.3d at 945 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) and stating "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."). This finding of probable cause triggers the presumption of detention under §3142(e)(3). Additionally, both parties agreed during the detention hearing and in the present briefing that this is a presumption case. Accordingly, it is undisputed that the presumption of detention applies.

At the detention hearing, Fields argued that he could rebut the presumption of detention because he does not present a flight risk[1] and is not a danger to the community. Fields asserted he is a life-long resident of California, and has ties to the community he lives in, including living there in a stable with his girlfriend of five years. Fields also asserted his stability and compliance with previous supervised release contributed to early termination of his supervised release in 2024. As to danger to the community, he argued any danger related to the nature of his alleged offense

---

[1] The "risk of flight" under subsection 18 U.S.C. 3142(f)(2)(A) is viewed as a subset of the broader and more general "risk of nonappearance" set forth in 18 U.S.C. 3142(e). *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) ("'[I]t is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk. In the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins. Precision about these distinctions is constitutionally mandated and statutorily required.'") (quoting Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677 (2018)).

Also, the preponderance of the evidence standard requires that the risk of flight be substantial, rather than speculative or theoretical. *United States v. Figueroa-Alvarez,* 681 F. Supp. 3d 1131, 1140 (D. Idaho 2023) (noting that "serious risk of flight" requires more than a mere possibility of nonappearance) (citing *White*, 2021 WL 2155441 at *7). "The core inquiry . . . is whether there is a serious risk a defendant will *voluntarily* evade judicial oversight." *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *5 (E.D. Ky. Mar. 5, 2025).

can be effectively negated by limiting his travel.  The United States opposed these arguments, but the Magistrate Judge found that Fields rebutted the presumption. The Court has reviewed the briefing, the hearing with the Magistrate Judge, and pretrial services report.  As the Magistrate Judge found, Fields has sufficiently met his burden of production as to these factors overcome the presumption.  Thus, now the presumption remains a factor to be considered by the Court along with the other factors listed.

3. **Factors To Be Considered Under Section 3142(g)(1).**

      i. <u>The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device.</u>

As to 18 U.S.C. § 3142(g)(1), the nature and circumstances of the offense charged, as noted above, Fields is charged with conspiracy to possess with intent to distribute methamphetamine. During execution of the search warrants in this case, law enforcement located five large duffle bags containing multiple gallon size bags of methamphetamine (approximately 257 pounds) within the residence that Fields was observed exiting. [DE 7 at 21]. This is a serious offense. Congress thought that it was significant if the offense involved a drug trafficking crime for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.  § 3142(e)(3)(A).  This factor weighs in favor of detention.

      ii. <u>The weight of the evidence against the person.</u>

As to 18 U.S.C. § 3142(g)(2), the weight of the evidence, this factor specifically refers to the weight of the evidence of dangerousness and not the weight of the evidence of guilt. *Stone*, 608 F.3d at 948. Fields's criminal history includes felony convictions for possession or purchase of cocaine base for sale, possession of a firearm by a felon, vehicle theft, and robbery of a bank using a dangerous weapon, using and carrying a firearm during a crime of violence and interference

with commerce by robbery. Fields's most recent felony conviction occurred in 1997, when he was around age 24, which ultimately resulted in a 400-month sentence with a five-year term of supervised release.  Fields was released in 2021, and his supervised release was terminated early in July 2024.  The United States proffers that Fields began traveling to Kentucky when his supervised release was terminated early, and the United States asserts that this was part of his criminal endeavors given Fields has no ties to this community. [DE 7 at 29].  This factor weighs in favor of detention.

### iii.    The history and characteristics of the person.

As to 18 U.S.C. § 3142(g)(3), the Court considers the history and characteristics of the person, which includes "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. 3142(g)(3)(A)-(B).

A district court in the Sixth Circuit recently acknowledged "some disagreement about whether the 'community' in 18 U.S.C. § 3142(g)(3)(A) refers to the district of prosecution or some other community to which the person might have ties." *United States v. Abrego*, 787 F.Supp.3d 830, 865 (2025).  The Ninth Circuit held in *United States v. Townsend* that "community" includes both the community where charges are brought and any community in the United States to which the defendant has ties. 897 F.2d 989, 995 (9th Cir. 1990). District courts, including within the Sixth Circuit, have rejected that ties to any community are sufficient.  *United States v. Alverez–Lopez,*

No. 2:14–cr–45–FtM–38CM, 2014 WL 2882906, at *3 (M.D. Fla. June 25, 2014) (rejecting view that ties to any community in the United States are sufficient, as opposed to community of prosecuting district); *United States v. Bucio*, No. 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (citing *United States v. Koubriti*, No. 01-CR-80778, 2001 WL 1525270, at *6 (E.D. Mich. Oct. 16, 2001)). As noted by the Court in *Abrego*, it does not appear the Sixth Circuit has addressed the issue.  Regardless, "lack of ties to the prosecuting district can weigh in favor of detention . . . particularly [if] . . . the person charged was only incidentally in the prosecuting district . . . [but] strong ties to [a] community" may also "counterbalance" lack of ties to the prosecuting district. *Abrego*, 787 F. Supp. 3d at 864.

Fields has little to no ties to Louisville, the community where he is charged.  Instead, he has lived his entire life in California, has lived in California with his girlfriend of five years and her children, and has worked as a delivery driver for DoorDash and other delivery-based companies. As discussed above, Fields has a significant criminal history leading up to age 24, before he was incarcerated.  In his previous case, he was found guilty by a jury of violating 18 U.S.C. §§ 2113(a) & (d)(robbery of a bank using a dangerous weapon); 18 U.S.C. § 924(c) (three counts of using and carrying a firearm during a crime of violence); 18 U.S.C. § 1951 (interference with commerce by robbery); and 18 U.S.C. § 111(a)(1)(b) (assaulting a federal officer). [DE 7 at 30, DE 7-2, Order Regarding Defendant's Motion for Early Termination of Supervised Release]. His criminal history was Category VI. [*Id*.][2]  Fields was arrested in this case after his supervised release was terminated early for maintaining compliance with the terms of his release. [*Id*.] The

---

[2] The order from Fields's prior case terminating release early was not before the Magistrate Judge and contains important information that was unavailable and uncertain when the Magistrate Judge considered the issue.

pretrial services report states that Fields had a parole violation and conviction for failure to return to work release, but no details were provided.

Fields does not have strong ties to this district (the community where he is being prosecuted), while he does have strong ties to the community in which he lives in California. The United States argues that Fields is a flight risk because he has spent a substantial number of years in prison and now, at age 54, is facing a potential sentence of over 10 years, increasing his incentive to flee. Other than the unsubstantiated parole violation mentioned in the pretrial services report, Fields has no history of evading judicial oversight or fleeing. Although he did not commit the crime alleged in this case while on supervised release, that is because his supervised release was terminated early for compliance.

Although it is a close call, these arguments do not demonstrate a risk of flight or nonappearance by a preponderance of the evidence, especially when considered in combination with the other 3142(g)(1) factors discussed below and the conditions set by the Court. But Fields's past conduct and criminal history are concerning. This factor is neutral.

      iv.  <u>The nature and seriousness of the danger to any person or the community that would be posed by the person's release.</u>

As to 18 U.S.C. § 3142(g)(4), the nature and seriousness of the danger to any person or the community that would be posed by Fields's release must be considered. Fields has a concerning criminal history and pattern of criminal history leading up to his incarceration in 1997. While he exhibited good behavior resulting in early termination of his supervised release in 2024, he committed the instant offense not long after supervised release was terminated and the United States has proffered evidence that Fields's alleged criminal behavior in this district began shortly after his supervised release was terminated early.  Thus, during his time not in prison he has exhibited a pattern of criminal history. The Court also considers that this is a case in which

11

Congress presumed detention given the offense. "[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). This factor favors detention.

### III.    CONCLUSION

The Court has listened to the detention hearing in its entirety, reviewed the pretrial services report, the docket, and the parties' briefing. While the appearance bond entered by the Magistrate Judge mitigates some of the United States's concern as to flight risk, as Fields is required to turn over his passport, not apply for a new passport, and his travel is restricted, they do not mitigate the concern as to dangerousness as Fields is still permitted to travel in his community to transport his girlfriend's children to school, travel to a non-delivery based job, and travel across the country from California to Kentucky. It is particularly difficult to mitigate dangerousness through travel restrictions given Fields will be required to appear frequently in Kentucky for court appearances, which will require significant lengthy travel from California. Looking at all the evidence presented, the presumption, criminal history, timing of the offense in relation to release, there are no conditions or combination of conditions that will mitigate dangerousness and adequately protect the community.

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that the United States's motion to revoke release order [DE 7] is **GRANTED**. The Defendant shall remain and is remanded to the custody of the U.S. Marshals.

Rebecca Grady Jennings, District Judge
United States District Court

April 22, 2026

Cc:     Counsel of Record, USP, USM